788 P.2d 87

**In the Matter of a Member of the State Bar of Arizona, John C. MacASKILL, Respondent.**

**No. SB–89–0049–D.**

Supreme Court of Arizona, In Banc.

Feb. 15, 1990.

John Colin MacAskill, Phoenix, pro se.

State Bar of Arizona by Harriet L. Turney, Chief Counsel, and Yigael M. Cohen, Phoenix, for State Bar.

CAMERON, Justice.

## I. JURISDICTION

The Arizona State Bar Disciplinary Commission (Commission) recommends that John Colin MacAskill be disbarred from the practice of law, ordered to pay restitution to his former clients and ordered to pay costs to the State Bar of Arizona (Bar) in the amount of $1549.40. We have jurisdiction pursuant to 17A A.R.S. Sup.Ct.Rules, Rule 53(e).

## II. FACTS

In the fall of 1987, numerous complaints were filed against respondent John Colin MacAskill. The Bar wrote a series of letters to respondent concerning the complaints but he failed to answer the letters. On 19 November 1987, the Bar notified respondent as follows:

> Pursuant to Rule 55(g), Rules of the Supreme Court of Arizona, you are hereby given notice that your failure to comply with these requests for response within ten (10) days of receipt of this letter will necessitate the taking of your deposition pursuant to subpoena. Please be further advised that, should your failure to cooperate result in the taking of a deposition pursuant to Rule 55(g), you "shall be liable for the actual costs of conducting such deposition...."
>
> I again refer you to Rule 51(h) and (i), and caution you that failure to cooperate with a disciplinary investigation is grounds, in itself, for discipline.

Respondent failed to answer and his deposition was taken on 24 November 1987.

The Bar conducted further investigations and on 29 July 1988, filed an amended complaint containing eleven counts. Again, respondent did not reply. On 21 September 1988, the Bar notified respondent that he had failed to answer as required pursuant to Rule 53(c)(1), Rules of the Supreme Court, which provide that "in the event respondent fails to answer within the proscribed time, the complaint shall be deemed admitted."

On 10 November 1988, the Disciplinary Committee of the State Bar of Arizona (Committee) conducted hearings in this matter. Respondent, indicating by telephone that he had the flu, asked for a continuance of the hearing. After some discussion, it was agreed that he could hear the testimony of the witnesses by speaker phone and ask questions if he wished. Respondent took advantage of this and listened to the proceedings.

At the hearing, three clients testified concerning respondent's misconduct. At the conclusion of the hearing, respondent asked that the hearing be recessed to a time when he could be heard in person. A hearing was held for that purpose on 1 December 1988. Respondent appeared, answered the questions of the Committee members and bar counsel, and made the following statement to the Committee:

> The—to address the matter with not answering the Bar Association, I have no excuse for that. There is none. There is a reason behind my conduct, and I'm sure that if you have done, you know, these hearings before, that my conduct points to a mental problem that is caused by alcohol.
>
> I have sought treatment. I was in an intensive outpatient care thing in January for approximately 16 weeks. It got extended because it was three nights a week for four hours, and they would allow you to continue the program as long as you wanted to. I went through that with Charter. The program wasn't totally successful.
>
> I have still had problems with drinking. I have sought other counseling, gone to AA on numerous occasions, and with the—these problems, with the financial problems, and my own, I guess, lack of good sense a lot of times, it causes for—not a loss of memory, but a lack of proper behavior.
>
> As we all have, I worked very, very hard to get through school and become a licensed attorney. I know that the Bar

Counsel has requested that the outcome of this be disbarment. I would hope that there could be some other result than that. I don't have any suggestions, and that decision is yours, but I—the only thing I can do is say that I'm very sorry for my conduct and I'm doing everything I possibly can to—probably too little too late to work at it. And that's all I have.

The Committee found respondent in violation of ten counts of the Rules of Professional Conduct, Rule 42, Rules of the Supreme Court, and recommended disbarment. The Commission adopted the findings of fact and conclusions of law of the Committee. The Commission also recommends disbarment. After the recommendations were filed in this court, the clerk of this court mailed notices to respondent's listed office. The letter was returned marked "moved left no forwarding address." Respondent has filed no pleadings or otherwise appeared in this court.

### III. DISCUSSION

The Committee considered eleven counts of misconduct. We will discuss each count separately and the applicability of the Rules of Professional Conduct, as well as other rules of the Supreme Court.

### COUNT ONE

That in March of 1986, you were retained by Lucretia Marsh to assist her in obtaining approximately $13,000 from her deceased father's estate. You thereafter, neglected to file an amended petition and waiver of bond of intestacy so that Ms. Marsh could receive her portion of the estate. In addition, you failed to adequately respond to Ms. Marsh's requests for information.

Lucretia Marsh, respondent's client, testified before the Committee:

Q. What paperwork needed to be done to have the estate completed?

A. Just we needed—I needed to sign a paper saying that—for me to be the executor, and he gave me a paper for my brother and I to sign for a bond, and I did that and notarized it and sent it to him, and that was the last of it.

Q. And the work was never completed, to your knowledge?

A. Not that I know of.

Q. Can you describe the attempts that you've had to contact—in trying to contact Mr. MacAskill to get the work done?

A. Well, I just called him a couple times, and since he was never there or anything I decided to write you guys. I haven't really wrote or called him or anything. I've been writing to you guys more because I think that you'd be able to contact him better, because it's hard to get ahold of him.

Q. Have you recently been in contact with him in the last two or three months? Him being Mr. MacAskill.

A. Yeah—well, you called him that one day, and then he called me at my aunt's house and told me what the estate was doing, and he said he'd send me my file, and he never did. That was the last time I talked to him.

Q. So to date the file of the estate still hasn't been finished?

A. Huh-uh, no.

Q. Did you ever pay a retainer to Mr. MacAskill?

A. No. He was supposed to get paid after the estate was finished.

Q. Are there still papers belonging to you that Mr. MacAskill has?

A. I don't know. I assume there is.

Respondent's failure to finish the paperwork for his client demonstrates a lack of diligence in violation of ER 1.3 (Diligence). Further, his failure to contact Ms. Marsh or send her the file is a violation of ER 1.4(a) (Communication).

### COUNT TWO

That on June 2, 1987, you were suspended by the Arizona Supreme Court for non-payment of annual State Bar membership dues. In spite of being un-

der suspension, you have continued to engage in the practice of law as you admitted in your deposition of November 24, 1987.

In November 1987, respondent testified by deposition. At that deposition, the following transpired:

Q. Are you presently engaged in the practice of law?

A. Yes.

Q. Are you aware that your license has been suspended for nonpayment of dues?

A. Yes.

Q. And you are still engaged in the practice of law at this time?

A. I've got a family that I have to support, and I've been having some very heavy financial problems. That's the reason that—that's the only way I can make a living. The Bar dues will be paid very very shortly, and the application will be filed.

Q. Have you notified anybody at the Bar of your situation?

A. No.

Q. When did you become aware that your license had been suspended?

A. I believe it was July. It was either June or July.

Q. Have you appeared in court since that time?

A. On one occasion.

Q. What was the nature of that occasion?

A. A proceeding with a DWI down in Phoenix City.

Over a year later, he testified before the Committee and was examined by the Chairman of the Committee as follows:

Q. Are you still under suspension?

A. Yes, sir, I am.

Q. So you have not—

A. I've been doing everything I possibly can to get money to put together to file the papers to get readmitted.

Q. Are you still practicing law?

A. On a very limited basis. I'm trying to close it down.

Q. Are you in fact practicing law at the present time, though even on a limited basis?

A. Yes, sir.

This testimony makes clear that respondent, though suspended for failure to pay bar dues, continued to practice law for more than a year.

Accordingly, respondent is guilty of practicing law without a license in violation of ER 5.5 (Unauthorized Practice of Law). *See In re Phelps*, 154 Ariz. 516, 744 P.2d 428 (1987).

## COUNT THREE

That on April 10, 1987, you were retained by Eric L. Allen to represent him in a dissolution matter. Mr. Allen subsequently gave you a $687.00 retainer.

You thereafter, neglected Mr. Allen's case by failing to file a petition for dissolution. In spite of the fact that no petition had been filed, you gave Mr. Allen repeated assurances that it had, in fact, been filed. In addition, you failed to respond to opposing counsel's telephone calls.

At the 10 November hearing, Eric Allen testified as follows:

Q. Did you retain Mr. Allen—or Mr. MacAskill as your attorney in 1987?

A. Yes, I did.

Q. For what reason?

A. For a dissolution.

Q. Could you explain the problems that you had in dealing with Mr. MacAskill?

A. Well, the major problems was I kept asking him about the filing of the petition, and he kept telling me that it was filed, and when I got in contact downtown and found out that it wasn't filed, I called back, and then he ignored phone calls, letters, he ignored the—my wife's attorney, didn't answer any of his letters or calls, and it was just a big mess.

Q. How much of a retainer did you give him?

A. I gave him a total of $687.

Q. What representation did he make to you regarding the service of the dissolution papers?

A. Well, he said he needed $60 for the service because he said my wife was avoiding the service, and that wasn't right because Dick Taylor in his letter stated that he would accept service at his office for it.

Q. And who is Dick Taylor?

A. That was my wife's attorney.

Q. What representations were made about the filing of the dissolution petition?

A. He told me that after I signed it that he had—would file it on Monday, because the Friday that I was there it was too late to have it done.

Q. Was that done?

A. No, it wasn't.

Q. How did you find that out?

A. I had to call downtown at the clerk of the court—or what is it? The records office. And I obtained a letter from them, and it certified that nothing has been filed, ever.

Q. Did you and your wife eventually reconcile?

A. Yes, we did.

Q. What attempts were made to obtain a refund from Mr. MacAskill?

A. I called him on the telephone, I've wrote him letters. In the letter that I sent, the first letter, I didn't send any copies to anybody, but the second letter I sent a copy here to the State Bar, and the copies after that have all been sent here.

Mr. Allen also testified that he had sued respondent in the Tolleson Justice Court. The court allowed respondent $250 for legal services and gave Mr. Allen a judgment for $437.

We believe respondent violated ER 1.3 (Diligence) and ER 8.4(c) (Misconduct).

## COUNT FOUR

That you failed to cooperate with the State Bar of Arizona's investigation into the charges contained in Count Three.

Specifically, you failed to respond to three letters, dated October 19, 1987, November 9, 1987, and December 7, 1987, respectively, each of which requested that you provide information with regard to the charges raised by Eric L. Allen.

The file before this court contains copies of the letters sent to respondent. There is, however, nothing in the file by way of response from respondent. Respondent does not contest this fact. We believe respondent failed to cooperate with the Bar's investigation in violation of Rule 51(h) (Failure to Furnish Information) and (i) (Failure to Cooperate), Rules of the Supreme Court.

## COUNT FIVE

That in April of 1986, you were retained by Douglas L. Temple to file a dissolution action on his behalf. To this end, Mr. Temple paid you $350.00 as an initial retainer.

You thereafter, neglected Mr. Temple's case by not serving the dissolution papers on his wife until March 15, 1987. You neglected his case further by allowing it to be placed on the inactive calendar, from which it was ultimately dismissed.

In addition, you consistently failed to respond to Mr. Temple's requests for information. You also failed to return to Mr. Temple, the unused portion of his retainer.

Respondent admitted that he had taken eleven months to serve Temple's wife in the dissolution matter and that he failed to respond to his client's request for information. We believe that respondent violated ER 1.3 (Diligence), and ER 1.4(a) (Communication). The Committee also found that respondent violated ER 1.15 (Safekeeping Property), because respondent failed to return the unused portion of his client's retainer. This matter, however, is contested. Respondent stated before the Committee:

The best of my knowledge I don't believe that Mr. Temple paid my full fee, but when he left with the file we called it

square. I believe that's all on the Temple matter.

The file before this court does not contain evidence to rebut respondent's testimony. The Bar has not shown by clear and convincing evidence that respondent violated ER 1.15. *See In re Neville,* 147 Ariz. 106, 108, 708 P.2d 1297, 1299 (1985).

### COUNT SIX

That you failed to cooperate with the State Bar of Arizona's investigation into the charges contained within Count Five. Specifically, you failed to respond to three letters, dated September 23, 1987, October 22, 1987, and November 19, 1987, respectively, each of which requested that you respond to the charges raised by Douglas L. Temple.

Again, the file before this court shows that three letters were sent to respondent, which he failed to answer. At his deposition, he did not deny this. We believe respondent violated Rule 51(h) (Failure to Furnish Information) and (i) (Failure to Cooperate), and ER 8.1(b) (Failure to Disclose).

### COUNT SEVEN

That in June of 1986, you were retained by Rita M. King to represent her in a lawsuit against a contractor.

You thereafter, completely neglected Ms. King's case. In addition, you consistently failed to respond to Ms. King's telephone calls and letters.

Additionally, we note that respondent delayed in acting on Rita King's case. For example, when the lawsuit was actually filed and the process server tried to serve the defendant, the defendant was not at an address where he could be found. At the hearing, Ms. King testified:

Q. Ms. King, did you have reason to retain John MacAskill in June of 1986?

A. Yes, I did.

Q. For what reason?

A. I had had a young man come in and do some work on my patio, and the job was completely loused up, and he would not make the necessary correc-

tions to put it right, so I hired Mr. MacAskill to take this case for me and he agreed.

Q. And how much of a retainer did you pay him?

A. At that point I gave him $100.

Q. Was any money additionally paid?

A. At a later time $50 extra was paid to him, yes.

Q. Can you describe the problems that you had in dealing with Mr. MacAskill?

A. First of all, he would not send me any correspondence that was necessary, unless I would specifically ask for it. I got one copy of a paper which I don't have with me. I would repeatedly make phonecalls to him, and repeatedly he would never answer my calls. I had written at one point to him, and he did contact me and said, you certainly know how to get a person's attention. After that it went right back to the same thing. I would make my calls day after day after day, and he would not return calls.

He claimed that papers were lost down at the process server's office. The process server came to me asking the address of the person to be served, which I had no idea, because I had given him the initial information. There was just no contact with Mr. MacAskill that he was really doing anything. It was just one excuse after the other.

We believe respondent violated ER 1.3 (Diligence), and ER 1.4(a) (Communication).

### COUNT EIGHT

That you failed to cooperate with the State Bar of Arizona's investigation into the charges contained within Count Seven. Specifically, you failed to respond to three letters, dated September 24, 1987, October 22, 1987, and November 19, 1987, respectively, each of which requested that you respond to the charges raised by Rita M. King.

Once again, the record shows that the Bar sent a number of letters to respondent which he failed to answer or deny. We

find respondent violated ER 8.1(b) (Failure to Respond), and Rule 51(h) (Failure to Furnish Information) and (i) (Refusal to Cooperate).

## COUNT NINE

This count contained an allegation of two prior ethical violations for which respondent was disciplined. This is not disputed and may be considered an aggravating circumstance for purposes of imposing discipline.

## COUNT TEN

That you were retained on December 28, 1987, by Allen Hunt to initiate dissolution proceedings on his behalf. To this end, Mr. Hunt gave you a six hundred dollar ($600.00) retainer. You were thereafter, retained by Allen Hunt's wife, Shelby Hunt, to have her name legally changed. To this end, you were given one hundred and fifty dollars ($150.00) on January 6, 1988, and an additional one hundred and fifty dollars ($150.00) on February 5, 1988. Finally, you were again retained by Allen Hunt on February 19, 1988, to initiate the probate of his mother's estate. For this matter, you were given a three hundred and fifty dollar ($350) retainer.

That you thereafter, failed to perform any of the work for which you were retained. That you failed to adequately communicate with both Allen and Shelby Hunt. That you agreed to represent the Hunts at a time when your license to practice law had been suspended by the State Bar of Arizona.

In discussing this charge, respondent testified before the Committee:

Q. In the Hunt matter you stated that the case was completed. That was completed just in September of 1988; is that correct?

A. That's correct.

Q. Okay. And that was completed about 15 months after you were suspended—

A. Yes.

Q. —from the practice of law? That was just the completion of Mr. Hunt's dissolution; is that correct?

A. That's correct.

Q. But you were also retained by his wife to have her name legally changed, and that wasn't done, was it?

A. After she retained me, she went to the courthouse and she did it herself.

Q. But she did pay you—

A. But she asked me—she asked me for the money back, and I have paid her all but $150 of her money back.

Q. When was that paid.

A. Oh, I have to say that was paid sometime in June or July of this year.

Q. You were also retained to initiate the probate of her mother's estate; is that correct?

A. No, I was not.

Q. You deny that you were paid $350 for that?

A. I was paid by Allen Hunt. I believe it was a check from Shelby's account, but I was paid $350 to do some work with another counsel in another state in communicating as to what the—there was a dispute as to the value that was placed on Allen Hunt's mother's property—

Q. Okay, that's correct.

A. —or father's, and that work was done. Nobody ever complained that I didn't do that work.

Q. That was also done after you were suspended?

A. Yes, sir.

Q. You never advised the Hunts that you were under suspension, did you?

A. No, sir, I didn't.

We find that respondent violated ER 1.3 (Diligence), ER 1.4(a) (Communication), and ER 5.5 (Unauthorized Practice of Law).

## COUNT ELEVEN

That you failed to cooperate with the State Bar of Arizona's investigation into the charges contained in Count Ten. Specifically, you failed to respond to

three letters, dated March 15, 1988, May 3, 1988, and June 8, 1988, respectively, each of which requested that you respond to the charges raised by Allen and Shelby Hunt.

Again, the record is clear that respondent failed to cooperate with the Bar in its investigation into the charges brought against him by Allen and Shelby Hunt, all in violation of ER 8.1(b) (Failure to Disclose).

## IV. SANCTIONS

■ The Committee recommended, and the Commission agreed, that respondent be disbarred. The Commission also recommended that respondent be ordered to pay restitution to some of the victims. Respondent filed no pleadings in this court opposing this proceeding and did not otherwise appear.

■ The purpose of attorney discipline is to protect the public, the profession, and the administration of justice, as well as to deter other lawyers' improper conduct. *In re Blankenburg*, 143 Ariz. 365, 367, 694 P.2d 195, 197 (1984). In determining the appropriate discipline, we are guided by the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986). *In re Fresquez*, 162 Ariz. 328, 783 P.2d 774 (1989). Additionally, the following four factors are useful in determining appropriate discipline: 1) the duty violated; 2) the lawyer's mental state; 3) the actual or potential injury caused by the lawyer's misconduct; and 4) the existence of aggravating or mitigating factors. ABA *Standards*, Standard 3.0.

■ The respondent's misconduct involved four violations of ER 1.3 (Diligence), three violations each of ER 1.4(a) (Communication) and ER 8.1(b) (Failure to Disclose), two violations of ER 5.5 (Unauthorized Practice of Law), 51(h) (Failure to Furnish Information) and Rule 51(i) (Refusal to Cooperate) of the Rules of the Supreme Court, and one violation each of ER 8.4(c) (Misconduct; Involving Dishonesty, Fraud, Deceit or Misrepresentation) and ER 1.15 (Safekeeping Property).

Disbarment is generally appropriate where:

(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

ABA *Standards,* Standard 4.41. The commentary to Standard 4.41 states:

Lack of diligence can take a variety of forms. Some lawyers simply abandon their practices, leaving clients completely unaware that they have no legal representation and often leaving clients without any legal remedy. Other lawyers knowingly fail to perform services for a client, or engage in a pattern of misconduct, demonstrating by their behavior that they either cannot or will not conform to the required ethical standards.

Disbarment is appropriate in each of these situations.

*Id.* Respondent engaged in numerous acts of misconduct that centered on his lack of diligence in handling several client's matters to the injury of those clients. Respondent's pattern of misconduct in his dealings with several clients, his constant failure to comply with the Rules of the Supreme Court, the vulnerability of his clients who suffered financial losses, and a prior disciplinary record, all indicate that disbarment is the proper sanction in this case.

## V. DISPOSITION

Respondent is ordered to pay restitution as follows: $337 to Mr. Allen (the victim in Count Three), $1,250 to Mr. and Mrs. Hunt (the victims in Count Ten) and Bar costs in the amount of $1,549.40.

Respondent disbarred.

GORDON, C.J., FELDMAN, V.C.J., and MOELLER and CORCORAN, JJ., concur.